**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | NO. 2:13-CR-148 |
| ) | 2:15-CV-210 |
| MARIO STOKES, ) | |
| ) | |
| Defendant/Petitioner. ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion Under 28 U.S.C. Section 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by Mario Stokes on June 2, 2015 (DE #61). For the reasons set forth below, the section 2255 motion is **DENIED** without hearing. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **ORDERED** to distribute a copy of this order to Mario Stokes, #18521-027, Elkton FCI, Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 10, Lisbon, OH 44432, or to such other more current address that may be on file for the Defendant. Further, this Court declines to issue Defendant a certificate of appealability.

BACKGROUND

On December 18, 2013, an indictment was filed against Defendant, Mario Stokes ("Stokes"), charging him with three counts, as follows: (1) possession with intent to distribute a quantity of

a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1); (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Stokes entered into a plea agreement with the Government, and the agreement was filed with this Court on February 11, 2014. (DE #18). In it, Stokes agreed to plead guilty to Count 2 of the Indictment. (*Id.*, ¶ 7). The Government and Stokes also reached certain agreements that were not binding on the Court. (*Id.*). Specifically, they agreed that if Stokes continued to accept responsibility for his criminal conduct, he should receive a two point, and if eligible, an additional one point reduction in his offense level. (*Id.*, ¶ 7(c)(i)). They also agreed that, at sentencing, the Government would move for dismissal of the remaining counts of the Indictment. (*Id.*, ¶ 7(d)).

In exchange for these benefits, the plea agreement contained the following wavier:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction

>    and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to the negotiation of this plea agreement, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255[.]

(*Id.*, ¶ 7(f)).

Further, Stokes agreed that his attorney had "done all that anyone could do to counsel and assist [him]," that he was offering his guilty plea "freely and voluntarily and of [his] own accord," that "no promises [had] been made to [him] other than those contained in [the] agreement," and that he had not been "threatened in any way by anyone to cause [him] to plead guilty in accordance with [the] agreement."  (*Id.*, ¶¶ 10-11).

This Court held a change of plea hearing on February 18, 2014. (DE ##20, 73).  When asked whether he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by Mr. Soliday as [his] attorney," Stokes replied "yes, sir."  (DE #73 at 9-10).  After Stokes read through paragraph 7 of his plea agreement, the Court asked him whether he read it previously, understood it, agreed with it, and was asking the Court to approve it.  (*Id.* at 10-11).  Stokes answered yes to each of these questions.  (*Id.*).  Stokes acknowledged repeatedly that he agreed with the individual and collective terms of the plea agreement and

3

confirmed that he wanted to plead guilty under the agreement. (*Id.* at 10-40).

The Court informed Stokes that for the count he was pleading guilty to, "the most that you could get would be ten years in jail, a fine of up to $250,000 or a combination of both of those, up to three years of supervised release, full forfeiture and a $100 special assessment," and Stokes answered that he understood. (*Id.* at 15). Additionally, the Court advised Stokes that the least he could get would be probation, no fine, and no supervised release, no forfeiture but that he would still have the $100 special assessment. (*Id.*). Stokes again indicated that he understood. (*Id.*). The Court also confirmed that Stokes understood that the Court would ultimately decide his sentence and that neither the Government's recommendations nor the Guidelines were binding. (*Id.* at 15-18).

During the hearing, this Court questioned Stokes extensively about his voluntary waiver of his right to appeal, including the following excerpt from that colloquy:

> Q: Let's go on to subparagraph (f). Mr. Stokes, that talks about appeals. Do you understand that in all criminal cases a defendant has a right to appeal his conviction and/or sentence in a case? You understand that?
>
> A: Yes, sir.
>
> Q: In this case you understand, you acknowledge that I have the jurisdiction and authority to sentence you up to the maximum provided for by the statute. Remember you and I talked about

that before. That's the ten years in jail, a fine of up to $250,000 or a combination of both of those, up to three years of supervised release, full forfeiture and a $100 special assessment. Do you understand that?

A: Yes, sir.

Q: What you're basically doing in this paragraph, Mr. Stokes, is you're giving up all of your rights to an appeal. For all intents and purposes, you're giving them all up. There's a few you can't, like jurisdiction. But for all intents and purposes, you're giving them all up. Do you understand that?

A: Yes, sir.

Q: So down the road, you don't like the sentence I give you, you're not going to be able to tell Mr. Soliday, Mr. Soliday, do your thing, I want you to appeal, because you're not going to have a right to appeal that anymore. Do you understand that?

A: Yes, sir.

Q: Or if you don't like some of the rulings that I make, you may not be able to do those. Do you understand that?

A: Yes.

Q: That includes incompetence of counsel except as it relates to the negotiation of this plea agreement. Do you understand that?

A: Yes, sir.

Q: Understand that the government is not giving up any of their rights to an appeal?

A: Yes, sir.

Q: Are you sure this is what you want to do?

A: Yes, sir.

5

> Q: Did you make this decision knowingly and voluntarily?
>
> A: Yes, sir.
>
> Q: Did you talk to your attorney before making this decision?
>
> A: Yes, I did.
>
> Q: Did he answer all of your questions?
>
> A: Yes, he did.
>
> Q: Do you have any questions of the Court?
>
> A: No, sir.
>
> Q: Are you asking me to approve it as part of your plea agreement?
>
> A: Yes, sir.
>
> Q: And you understand that once the Court accepts this you're not going to be able to change your mind?
>
> A: Yes, sir.
>
> Q: You still want me to go ahead and accept it?
>
> A: Yes sir.

(*Id.* at 24-26).

Stokes was asked whether "anyone, including [his] own lawyer, any lawyer for the government, any government agent or anyone else made any other or different promise or assurance to [him] of any kind in an effort to induce or cause [him] to enter a plea of guilty in this case?" (*Id*. at 28). Stokes indicated that they had not. (*Id.*). He further indicated that his willingness to plead guilty resulted from prior discussions with both his lawyer and the

6

Government's lawyer, and that noone attempted to force him to plead guilty. (*Id.*).

On September 4, 2014, this Court sentenced Stokes to imprisonment for 87 months. (DE # 52). Stokes did not file a direct appeal.

Stokes filed the instant motion under section 2255 on June 2, 2015, arguing that his counsel was ineffective by "failing to inform Stokes of the Statutory Mandatory Minimum Sentence Under 18 U.S.C. Section 922(g)(1) Causing Him to Enter an Involuntary and Unknowing Plea" thus depriving him of his Sixth Amendment right to effective assistance of counsel. (DE #61 at 4). More specifically, he alleges that:

> In January of year 2014, I had a discussion with Mr. Soilday [sic] about whether I should plead guilty to the criminal charges contained in the indictment against me in Cause No. 2:13-CR-148, or whether I should take my case to trial. Mr. Soilday [sic] told me that it would be in my best interest to plead guilty because if I went to trial and was convicted, I would get a whole lot of time in federal prison.

\* \* \*

> However, during our conversation, Mr. Soilday [sic] did not inform me of the statutory mandatory minimum penalty for the 18 U.S.C. § 922(g)(1) charged offense in Count 2 of the indictment. He only advised me of the maximum penalty for Count 2 when negotiating my plea agreement. If I had known that the charge offense of Count 2 carried a minimum penalty of zero years imprisonment, I would have not pleaded guilty to Count 2 and would have insisted on going to trial.

7

(DE #63). In response, the Government contends that Stokes' claim is waived. (DE #72). This motion is fully briefed and ripe for adjudication.

DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Stokes' motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

9

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Stokes' claims with these guidelines in mind.

Waiver

Stokes claims that his counsel was ineffective in that he failed to provide him with information regarding the statutory mandatory minimum under 18 U.S.C. § 922(g)(1), and as a result, his decision to plead guilty to that count was not knowingly and voluntarily made. The Seventh Circuit has recognized the validity of plea agreement waivers and will enforce the waiver unless there is a claim that the waiver was entered into involuntarily or that the waiver was a result of the ineffective assistance of counsel during the negotiation of the plea waiver. In *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). In *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000), the Seventh Circuit applied its holding in *Jones* to bar an ineffective assistance of counsel claim that related only to the petitioner's performance with respect to sentencing. The Court found that "[b]ecause the challenge has nothing to do with the issue of a deficient

10

negotiation of the waiver, [petitioner] has waived his right to seek post-conviction relief." *Id.* Additionally, the Court stated that the following analysis should be considered in determining whether a claim has been waived:

> can the petitioner establish that the waiver was not knowingly or voluntarily made, and/or can he demonstrate ineffective assistance of counsel with respect to the negotiation of the waiver?

*Id.*

Here, the language used in the waiver provision of the plea agreement is slightly broader that the language at issue in *Jones* or *Mason*. Stokes waived his right to appeal or contest his conviction and sentence "to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to the negotiation of this plea agreement, including any appeal under . . . Title 28, United States Code, Section 2255[.]" (DE #18, ¶7(f)).[1] Based on the record before this Court, the Court is satisfied that Stokes knowingly and intelligently waived his right to seek post-conviction relief, except where alleging his counsel was ineffective in negotiation of the plea agreement. *See, e.g., United States v. Davis*, 348 F. Supp. 2d 964, 966 (N.D. Ind. 2004)

---

[1] Unfortunately, the Government's response brief inaccurately quotes the language of the plea waiver, relying on language more similar to that in *Jones* and *Mason* than the language at issue here. Because the Government fails to rely on the precise language found in Stokes' plea agreement, the response brief is of little assistance to the Court.

(finding, under a similar section 2255 waiver, that defendant knowingly and intelligently waived his right to file a section 2255 motion). As set forth by the Court earlier in this opinion, Stokes repeatedly testified during his hearing that he was satisfied with his counsel's performance, that he was knowingly and voluntarily pleading guilty, and that he understood the charges against him and the possible sentence he was facing. To the extent that Stokes now argues to the contrary, "[s]elf-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing - the latter are presumed to be true." *United States v. Mosley*, No. 93-1829, 1994 WL 503016, at *3 (7th Cir. Sept. 14, 1994) (citing, *inter alia, United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991) ("To allow [defendant] to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty pleas.")). As such, the Court is satisfied that he knowingly and intelligently entered into the plea agreement

Stokes acknowledges the waiver, but argues that, due to a change in Department of Justice Policy, the Government should decline to enforce the waiver provision. *See* Office of the Deputy Atty Gen., Memorandum to all Federal Prosecutors: Dep't Policy on Waivers of Claims of Ineffective Assistance of Counsel (Oct. 14,

2014)*available at* http://www.justice.gov/sites/default/files/press-releases/attachments/2014/10/15/dept-policy-on-waivers-of-claims-of-ineffective-assistance-of-counsel.pdf (last visited Apr. 24, 2017). The DOJ's change in policy, however, did not alter the law, and in the Seventh Circuit, waivers such as this one remain enforceable. *See U.S. v. Roach*, 600 Fed.Appx. 472 (7th Cir. 2015)("And for existing waivers that would bar a claim of ineffective assistance, the Attorney General has simply directed that the government should decline to enforce the waiver to block that claim."); *United States v. Oziolisa*, Nos. 3:10-cr-39, 3:11-cv-236, 2015 WL 686416, at *3 (S.D. Ohio 2015)("The Deputy Attorney General's Memorandum embodies a change in Department of Justice policy, not a change in the law that renders prior waivers of collateral attack invalid.").

Having determined that the waiver is enforceable, this Court must consider whether Stokes' claim falls within the waiver. Here, Stokes argues that his counsel was ineffective in that he failed to advise him of a mandatory minimum sentence and that, had he known that minimum, he would have went to trial. At least arguably, this claim relates to the negotiation of the plea agreement and therefore falls outside the waiver. Neither party appreciated the difference in the language between Stokes' plea waiver and those at issue in *Jones* and *Mason*, and so this decision is not based on well-developed arguments of the parties. In the absence of such

arguments, this Court opts to error on the side of caution, and address Stokes' claim on the merits. Ultimately, it is of no consequence, however, as the claim fails on the merits.

Stokes' Claim Fails on the Merits

Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the petitioner must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires a petitioner to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). A defendant must establish specific acts or

admissions that fall below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689).

Stokes argues that, if he had known the mandatory minimum for the offense to which he pled guilty, he would have opted to go to trial. The mandatory minimum Stokes references is, in this instance, zero months of imprisonment. In other words, there is no mandatory minimum sentence. Furthermore, Stokes testified that he talked with his attorney about his possible sentence. (DE #73 at 11, 19, 28, 30). And, even if he had not, this Court advised Stokes that the minimum in his case was probation, no fine, no supervised release, no forfeiture, but a $100 special assessment. (*Id.* at 15). Thus, at least at the time of the change of plea hearing, Stokes was well-aware that there was no mandatory minimum period of incarceration for Count 2.

Furthermore, Stokes has not shown he was prejudiced by this alleged failure on the part of his counsel. Stokes offers no explanation how knowing this would have impacted his plea decision. One can understand how pleading without knowing the mandatory minimum and later learning that you are subject to a mandatory minimum period of incarceration could be prejudicial, but how is a defendant prejudiced by counsel's failure to advise him that there is no mandatory minimum period of incarceration? His counsel did not mislead him into believing that he was subject to a mandatory minimum term of incarceration which was not in actuality correct.

In his memorandum but not his affidavit, Stokes claims that "[a]t no time did Soilday [sic] advise him of any applicable guideline sentencing range for Count 2 when negotiating his plea agreement..." (DE #62 at 4). First, this too is contradicted by the defendant himself in the plea colloquy. (DE #73 at 19). Furthermore, a guideline computation often cannot be made with any certainty in advance of the preparation of the pre-sentencing investigation report, after the change of plea hearing. Effective assistance of counsel does not require that counsel correctly predict a defendant's guideline range. In the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005); *United States v. Martinez*, 169 F.3d

16

1049, 1053 (7th Cir. 1999).

Unquestionably, Stokes knew what sentence he was potentially facing. He was advised of the possible penalties he was facing at his initial appearance on December 6, 2013 (DE #3). The plea agreement itself set forth Stokes' possible penalties. (DE #18 at ¶7(b)). The Court advised Stokes of the possible penalties in detail at the change of plea hearing, including the fact that this Court was not bound by the parties' recommendations and that he could receive a sentence up to the statutory maximum of 10 years. (DE #73 at 15-26). At the change of plea hearing, he also indicated that he had fully discussed the charges made against him with his attorney, and that he was fully satisfied with his attorney. (DE #73 at 9-10. Furthermore, he indicated that noone, including his lawyer, had "made any other or different promise or assurance to [him] of any kind in an effort to induce or cause [him] to enter a plea of guilty in this case." (*Id.* at 28). Stokes has not claimed that he lied at the change of plea hearing, but even if he were making such a claim it would fail. A defendant's statements given under oath during a plea colloquy are presumed to be true. *United States v. Redmond*, 667 F.3d 863, 870 (7th Cir. 2012).

Stokes has not demonstrated that his counsel's alleged omissions fell below an objective standard of reasonableness or that he was prejudiced by his counsel's alleged failures. His

17

claims therefore fail on the merits.

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Stokes has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, Stokes' section 2255 motion is **DENIED** without a hearing. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **ORDERED** to distribute a copy of this order to Mario Stokes, #18521-027, Elkton FCI, Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 10, Lisbon, OH 44432, or to such other more current address that may be on file for the Defendant. Further, this Court declines to issue Defendant a certificate of appealability.

**DATED: April 24, 2017**                 /s/ RUDY LOZANO, Judge
                                                        **United States District Court**